Good morning. May it please the court. My name is Eitan Casteljanic. I'm representing Sean Cantrall on this appeal. Cantrall applied for disability benefits in January of 2007 and he's alleging that he's been disabled since February of 2005 due to anxiety and depression. The anxiety has also been called social phobia, panic disorder. I'd like to now focus on the main errors here that require reversal. The biggest error I think in this case involves the ALJ's failure to state any reason for rejecting parts of the opinions of all of the examining psychologists here. So there were four examining psychologists, Dr. Moore, Dr. Schneider, Dr. Carter and Dr. Alford. All four of them stated opinions about Cantrall being markedly impaired. Dr. Alford used a different language, but all four of them said he had some pretty significant problems that would affect his ability to work. And the ALJ, some of that evidence the ALJ didn't even mention, but all of those opinions the ALJ didn't state any reason for discrediting. Carolyn W. Colvin Well, maybe I saw it a little differently, so maybe you can help me on that. In some of those, for example, like Schneider, was it the GAF score and the ALJ did give reasons, and in other ones he talked about the use and extent of alcohol and that sort of thing. So it seemed that he gave reasons, but I understood part of your argument was that there was more to their opinion than he talked about, and he should have talked more about this other part. Is that a fair statement? Dr. Alford That precisely. So it varied from... Carolyn W. Colvin My question on that is, if you required the ALJ to say everything about everything that every expert said, that would be a lot. So I'm looking for where or what your best cases are where he talks about some but not others. Dr. Alford Well, actually in the fairly recent case of Hill, which I didn't include in my brief, because it came out right after I'd written my opening brief, and I didn't really, I should have cited it in the reply brief and should have alerted you. Carolyn W. Colvin Even better, you could write a 28-J letter and then we'd all... Dr. Alford I can do that still. Carolyn W. Colvin You can. Dr. Alford So, and just to give you the citation, but that talk actually involved panic disorder as well, but it also, it's the same thing where you've got, it's not, the problem with Hill, pointing to Hill, is that it's not clear whether the ALJ completely didn't mention one examining physician's opinions, examining psychologist, he might be a psychiatrist in that case, Dr. Johnson, but it's not clear whether or not he just mentioned part and didn't mention other parts or he just didn't give a reason. So it's a little, the part, it's like as you pointed out, there are parts, for example, Dr. Moore said, had an opinion about him being markedly impaired in his ability to handle work stress. It's that part that the ALJ didn't, didn't reject it, he didn't accept it, he just mentioned it and then moved on. And if it's accepted, it shows that Cantrell is more impaired than the ALJ ultimately concluded he was. Now if he only did that with one opinion, that's not good. He did it with Dr. Schneider as well. So although he mentioned the GAF score, with Dr. Schneider, he didn't mention Dr. Schneider's conclusion, which also would support finding a disability. Same thing with Dr. Carter, he mentioned part of it, didn't mention other parts. And with Dr. Albert, it was not, failing to mention the conclusion. Then when you turn to the treating psychiatrist, Dr. Shuey, what makes this complicated, and this is a fairly common problem I've noticed from cases that involve Columbia River Mental Health, quite often all you have from Dr. Shuey is GAF scores, some findings, some clinical findings and some reporting of the symptoms and reporting how he's changing his medications. But what we don't really have from Columbia River Mental Health or Dr. Shuey are clear statements about functional limitations. The only place we really find those are from the four examining psychologists. But if you look at Dr. Shuey's findings and his GAF scores, those are consistent with the limitations that the ALJ sort of mentioned and then didn't credit or discredit. And the reason that's important is it shows that the evidence here is consistent all across from every treating and examining person. There's nobody here that says, nobody wrote that Cantrell was less than markedly impaired or that nobody came out and said, it looks like this guy can work, he's got no problem here. Everyone who treated him and examined him came up with some pretty significant limitations that were not explicitly rejected. And so in the Ninth Circuit, it's not, we don't have that kind of articulation standard that some other circuits have where ALJ must link his discussion to the findings to his conclusions. We don't have explicit language about that here. But we do have the line of cases, including Flores, where it talks about significant probative evidence that can't be discredited without explanation. And that's essentially what happened here, except he didn't come out and say I'm discrediting it, he just didn't accept it. He didn't include those limitations and he didn't state any reason for not crediting it. The other error here, the failure to accept all of those limitations and failure to give any reason for not accepting them then resulted in, it affected the analysis of Cantrell's Now an ALJ is required to credit a claimant's testimony unless the ALJ states convincing reasons for not doing so. And here, in my briefs, I discuss all of the reasons stated by the ALJ and none of those reasons are convincing and a lot of them include slight misunderstandings, we can put it, of the testimony. Or it compares evidence from different time periods where it's not actually contradictory. How would all of this have affected the RFC? That's the ultimate question. If it didn't affect the RFC, there's no error and we'd go home. The reason it would affect it is the ALJ found that he could perform simple repetitive work with limited contact with co-workers, supervisors, limited contact with the public, etc. It goes beyond that. There were time periods here where he wasn't even able to leave his home. And that's one of the things about panic disorder and agoraphobia and it's not a constant through the entire time period, but the other thing is that the person just panics and just can't function. And so that's the issue here, I think, is the RFC on its surface isn't completely wrong, much of it's correct, but what it's missing is that he would also have times where he simply wouldn't be able to continue to work. He wouldn't be able to make it through a 40-hour normal work week because he would get so stressed out that he'd have to withdraw from the situation. And there are times where he wouldn't even... supports that proposition. I think that's the logical... when you take the psychologist who said he's markedly impaired in his ability to handle the stress and expectations of a normal work day. That's just a sentence. That's a statement. They're all saying that. What supports that is their underlying findings where they sat down with him and described their clinical findings where he was nervous and anxious and just couldn't function, and then that led to their conclusion that he wouldn't be able to handle the stress and expectations of competitive work. And so if there was one person saying that and three people not saying that, it's not a strong case, obviously. Even though the ALJ would be required to mention the person who said it and give some reason for rejecting it, but here you've got pretty much four different psychologists listing all sorts of problems that he would have. And I'm always out of my element in these cases because I'm not a physician of any kind, let alone a psychiatrist or psychologist. But as I made my way through the record, I ask you the question I did because I don't see any of the reports stating the proposition you stated, which is there are times he cannot function. I see descriptions of conditions that might translate to that, but I'm not equipped to make that translation. So that's why I pose, what can I look at that tells me that the diagnoses or descriptions contained in the medical experts translate into what you just said? And the other element of that which is coming, so I'll let you know, is that the ALJ appears to say to the extent that there are statements like that, none of these doctors understood the level of your client's alcohol abuse. And I can't help but wonder if at some point inability to function is simply the result of drinking as much as he was drinking. How do we know that the underlying cause is something other than his drinking problem? Let me start by responding to that question. Dr. Moore at the first time he evaluated Cantrell did not know about the extent of his drinking. The second time he evaluated him, about 16 months later, he did know about it. Cantrell freely told him, I'm drinking less, but I'm still drinking too much. He told him, I'm drinking too much, I don't think this is good. But he was drinking to treat his anxiety, and that was the conclusion of Dr. Moore. So when Dr. Moore knew that he was drinking, and knew the extent of his drinking, he still opined that he couldn't handle, that that wasn't his main problem. That wasn't even his problem. His problem was the underlying anxiety. And so Dr. Moore knew about it. The other evaluations were largely after he'd become clean and sober. He went through treatment and became, then he was clean and sober, then he was starting to drink some as well, but much less than he had been before. But the point is, there were evaluations done where everyone knew about his history, that he'd been, had a drinking problem, he'd gone through treatment, was drinking either nothing or much less, and yet he was continuing to experience severe panic problems. And that's the panic, I think, is the biggest issue here that just disables him, that made it so he couldn't go to a regular workplace. So I would like to reserve some time for rebuttal. May it please the Court. Jordan Goddard, appearing for the Commissioner. Good morning. Mr. Cantrell is a self-professed artist by trade. He alleged disability due to anxiety and depression. However, he was not honest about his alcohol consumption. It was far more than he led on to most of the early examiners. And once he finally did acknowledge his alcohol problem and address it appropriately through alcohol treatment, the ALJ's findings are supported by substantial evidence that his condition showed marked improvement. In fact, he discontinued counseling about two months after finishing alcohol treatment because he felt he no longer needed it. He was painting for six hours a day, every day, in preparation for a gallery show coming up at a gallery in Troutdale, Oregon, where he had previously sold his paintings for up to $1,200 apiece. He had returned to work effectively, not long after completing alcohol treatment. Many of Mr. Cantrell's arguments rely on conflating the record. Each of these four examiners he refers to examined Mr. Cantrell at a different point in time, and Mr. Cantrell had a very different story to tell to each of these. Mr. Cantrell highlights Dr. Moore. He says that Dr. Moore knew about his drinking a second time. He saw him in December 2007. That is absolutely not true. What Dr. Moore records in December 2007 is that while Mr. Cantrell acknowledged he had a drinking problem and that he was drinking more than what he admitted the last time he saw Dr. Moore, he told Dr. Moore not to drink on weekends, only on weekends. However, only a couple of months after this evaluation, Mr. Cantrell went in to see Nurse Lalonde, a registered nurse who was doing medication management. Mr. Cantrell stunk of alcohol, and when he was confronted by this, he admitted that he had consumed 17 beers the night before, that it was his habit to drink up to eight beers by four o'clock. He had tried to cut that down to four beers at that point, though previously he admitted he was consuming typically eight beers before noon on a day. Sounds to the untrained professional eye that the alcohol was sort of a crutch to the anxiety. Yes, Your Honor. I'm not exactly sure how to interpret crutch in sort of a medical context but it's certainly... The argument in favor of disability is this guy has real anxiety problems, depression, etc. Isn't it entirely possible that his alcohol consumption is related to that? That when he gets these attacks of anxiety, depression whatsoever, he drinks? Yes, Your Honor. That is a reasonable interpretation. However, one of the important principles to the record, it's the ALJ's interpretation that must always be affirmed. And while there is certainly a connection between drinking and anxiety, what the record shows is that once he actually went through alcohol treatment, addressed his alcohol problems, that all these claims of not being able to leave the house disappear completely. He, like I said, within two months, he's discontinuing his therapy because he doesn't need it anymore. His counselor, who had been seeing him for years, agreed that while he still had some depression and anxiety, counseling wasn't even necessary anymore and she encouraged him to keep painting. Now the ALJ agreed that Mr. Cantrell had some significant anxiety and depression symptoms and he accommodated those by eliminating any contact with the public, limiting co-worker contact, and limiting Mr. Cantrell to simple repetitive work, which meant that he could go back to his old job as a kitchen helper, basically someone who chops vegetables for a chef. The fact that he discontinued his treatment altogether is strong evidence that he was capable of working. Furthermore, Dr. Alvord's opinion also supports the ALJ's conclusion. Dr. Alvord examined Mr. Cantrell in August 2009, which is not long before the ALJ issued his decision. Now Mr. Cantrell puts forth an interesting interpretation of Dr. Alvord's opinion because at one point Dr. Alvord says that despite the improvement after going through alcohol treatment, Mr. Cantrell's symptoms will continue to present as a significant hurdle to employment. Now Dr. Alvord goes on to say specifically that he believes that Mr. Cantrell is capable of performing simple tasks in a work environment and that his adaptive functioning overall is judged to be in the moderate range of impairment. Now the ALJ rationally interpreted this opinion, taking all these statements into account, not putting too much weight on the statement that his symptoms will continue to present a significant hurdle, whatever that means, and relying on the record as a whole and the other doctors, such as Dr. Peterson, who gave specific functional limitations. And based on the opinions of the record, the ALJ limited Mr. Cantrell to work that would involve public contact, had limited co-worker contact, and only involved simple repetitive tasks, which would accommodate a moderate degree of anxiety and depression. There are simply no inconsistencies here. If there are no further questions, then I will ask you to affirm the ALJs and the Commissioner's final decision that Mr. Cantrell was not disabled. Thank you. Mr. Yanich, you have some additional rebuttal time. Let me start by addressing Dr. Alvord's comment. Once again, the significant thing here is not that the ALJ didn't mention Dr. Alvord's conclusion about the hurdle. So that's one thing. Another thing is that with regard to your earlier question about the evidence, what supports their opinions about the problems he was having. When Cantrell went to Dr. Carter in November 2008, he was in full remission at that point from the alcohol, wasn't using. She noted that he appeared anxious. She noted a lot of other things, but that was a clinical finding that she noted at that appointment. What I was searching for, and still am searching for, is the connection between those kinds of observations and what you presented to us as a man who is unable to function. Because I haven't seen in what I've looked at something that says this man is unable to function. So the doctors, you're not a doctor, I'm not a doctor. The doctor's job is to make clinical findings, to meet with the person, and then to state their opinion about what kind of problems they think he would have. And they couched their language and wouldn't mark impairment in being able to handle the stress and expectations of a normal workplace. That's what they were saying. Or the others also said they had their other language that they used. They're the ones who do the synthesis. They take the evidence, the clinical evidence, and they base their opinion on it. The ALJ then is supposed to consider this and explain what weight he's giving to it. But the ALJ, instead of telling us that, he didn't do his job here. He didn't tell us any reason for rejecting those parts of these psychologists' opinions. I shouldn't say he didn't have any reason. He gave a reason with Dr. Moore, for example, that, well, I reject his opinion because Dr. Moore didn't know about his alcohol use. Dr. Moore, contrary to my colleague's suggestion, Dr. Moore knew about his alcohol use. I have that on page 37. I thought it wasn't that he didn't know, but the ALJ said he wasn't really fully cognizant of the level. So I guess the question goes back to one of my earlier questions to you. If the ALJ says something and gives a reason for rejection, does he or she have to lay out all the other points in the expert's report? I think that the reason he gave here, for one thing, he didn't say any reason for rejecting those other parts. But the reason that he gave doesn't apply because he Well, that's a different issue. It is a different issue. That's really my argument with regard to Dr. Moore, is that it wasn't legitimate to say, well, he didn't know enough about it. Dr. Moore actually sat down with him, interviewed him twice, heard his story the second time he admitted to it and said, look, this isn't his problem. Alcohol is not his problem. That's his opinion. And the ALJ doesn't adequately address that either because he didn't know enough to draw that conclusion. Thank you. Thank you. I'd like to thank both counsel for your argument this morning. Cantrell v. Colvin is submitted.
judges: Hawkins, McKeown, Clifton